UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DEMOND CAREY #314372            CIVIL ACTION NO. 17-cv-1641

VERSUS            CHIEF JUDGE HICKS

DARREL VANNOY            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Demond Carey ("Petitioner") was charged with second-degree murder, but a Caddo Parish jury found him guilty of the responsive verdict of manslaughter. He was adjudicated a second felony habitual offender and sentenced to 80 years at hard labor. His conviction was affirmed on direct appeal. State v. Carey, 110 So.3d 221 (La. App. 2d Cir. 2013), writ denied, 125 So.3d 417 (La.). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on the grounds that the verdict was contrary to the law and evidence and his trial counsel was ineffective in several respects. For the reasons that follow, it is recommended that the petition be denied.

### Sufficiency of the Evidence

**A. Relevant Facts**

The evidence showed that a group of people gathered under a tree in an empty lot next to the Quick Pack store on David Raines Road in Shreveport to drink alcohol and play dominoes and dice. The group included Petitioner, Lonzell Armstrong (the victim), and DeMarcus Jones. After an argument, those three men left but later returned with guns.

When the victim returned, he began to walk toward the tree, but another man convinced him to get in his truck and leave. The victim did return to his truck and start the engine. Before he could drive away, Jones filed multiple shots at his truck from the driver's side, and Petitioner fired multiple shots into the back passenger side. The victim drove away, but he was later found dead in the truck about two blocks away.

The police investigated the angle of the bullet holes in the truck and the victim, and they recovered bullets and several spent .40 caliber casings from the scene. A forensic pathologist testified that all of the victim's wounds occurred from the driver's side of the vehicle. A firearms expert concluded that four of the six .40 caliber casings were fired out of the same Glock semi-automatic firearm, and the other two casings had similar characteristics. The bullets recovered from the victim's body were .40 caliber bullets fired from a weapon consistent with a Glock, which has unique rifling.

The expert also determined that a bullet jacket recovered at the scene had conventional rifling and was consistent with a .38/.357 caliber bullet, which is typically fired from a revolver. Thus, he concluded that there was at least one Glock handgun fired and one revolver fired at the scene of the shooting. A .22 LR revolver was recovered from underneath the victim's feet on the floorboard of his truck. It had four spent casings and two live cartridges, but there was no physical evidence to indicate that the victim's gun was fired at the scene.

Two teenage sisters were outside on the porch at their grandmother's house near the scene. One girl testified that she heard the men arguing and later saw two of the men walk to the Quick Pack and begin shooting at a truck. She said she never saw the man inside the

truck with a gun, and both men outside were shooting at the same time, with one on either side of the truck.

The other girl said that she saw the men leave and then return, and one of the men was seen putting a gun in the back of his pants. Several minutes later, an older truck pulled into the Quick Pack parking lot, and she soon heard gunshots. She said she did not see the man in the truck get out of the truck and never saw him with a gun. She said that two men were shooting at the truck, one on each side.

Roy Riley testified that he knew the victim and both shooters. When he arrived at the Quick Pack, he heard someone say, "There he is." He saw the victim walking toward the men with a gun, but Haston Smith said, "I got this," and ran over to talk to the victim. Riley talked to Jones, who had a gun, and asked him not to go over there, but Jones kept walking toward the victim. Riley said that the victim got into his truck, and about 30 seconds later, Jones began shooting at the driver's side of the truck, and Petitioner began shooting at the back of the truck on the other side.

Haston Smith testified that when the victim drove up and someone said, "There he is," Smith asked if the victim had "gotten into it" with anyone, and someone said he had. Smith said that he would try to stop it and walked over to the victim, who was about 25 feet from the group under the tree. The victim told Smith that he was tired of "them" thinking he was a bitch. Smith told the victim to return to his truck because "he was not going to win this one." Smith told the victim that he was "outgunned" because he knew that some of the people under the tree were known to carry guns. The victim got in his truck and started the engine. He had a gun in his belt, but he did not pull it out or wave it.

Smith testified that Jones walked up and told Smith to go back to the tree, then Jones approached the truck and began shooting. Smith testified that he saw Petitioner walk from the tree to the back of the victim's truck and also begin shooting at it. Smith testified that, before the shooting, the victim did not "go after" anyone, make threats, or point a gun at anyone.

The forensic pathologist testified that the victim had a blood alcohol level of .09. A police officer testified that the legal limit in Louisiana for driving is .08. Smith testified that after the victim got in the truck and started it, he just sat there as if he was "out of it."

The forensic pathologist also testified that the victim had six gunshot wounds. Most of the wounds were irregular entry wounds because the bullets had passed through another object before striking the victim, which was consistent with someone being shot while seated in a vehicle. One wound was different. The bullet entered the victim's left forearm and exited where his wrist and hand met. The wound had tattooing, meaning that the gun was fired from within a few inches of the skin's surface and left gunpowder deposits. All of the wounds occurred from the driver's side of the vehicle, with the main track of all wounds from left to right.

Petitioner did not testify. The defense called Jones as its only witness. Jones admitted that he knew Petitioner, but he refused to answer any further questions. Jones had pleaded guilty to manslaughter for a sentence of 15 years if he testified and 17 years if he did not. He said at trial that he wanted to file a motion to withdraw his guilty plea. The State reports that he was allowed to withdraw his plea, and a jury later found him guilty of

second-degree murder. He received a life sentence. State v. Jones, 128 So.3d 593 (La. App. 2d Cir. 2013), writ denied, 140 So.3d 1173 (La. 2014).

Petitioner's jury returned a responsive verdict of guilty of manslaughter, by a 10-2 vote. The State then filed a second-felony habitual offender bill based on Petitioner's prior simultaneous convictions for manslaughter and three counts of attempted first-degree murder. He was adjudicated a second-felony offender, and Judge Marcotte sentenced him to 80 years at hard labor without benefits.

### B. State Court Decision

First-degree murder includes killing when the offender has specific intent to kill or inflict great bodily harm and is engaged in the perpetration or attempted perpetration of certain enumerated felonies. La. R.S. 14:30. Second-degree murder includes killing when the offender has a specific intent to kill or inflict great bodily harm, or the offender is engaged in the perpetration or attempted perpetration of certain felonies even though he has no intent to kill or inflict great bodily harm. La. R.S. 14:30.1. Petitioner was convicted of manslaughter, which is a homicide that would be first or second-degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31. Provocation does not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. Id.

Petitioner argued on direct appeal that the State failed to present sufficient evidence to negate his contention that he acted in self-defense. He argued that he fired his weapon

only after the victim exited his truck with a loaded gun and walked toward the tree until the victim was convinced to get back in his truck. Petitioner also claimed that the victim made threats and had been drinking. He contended that he fired shots only after Jones and/or the victim fired.

The state appellate court reviewed the elements of the crime, as well as the statute regarding justifiable homicide and self-defense, and it reviewed the evidence in detail. The appellate court noted that witnesses Riley and Smith provided unrefuted testimony that Petitioner fired shots from the back of the truck. A detective testified that a total of 17 shots were fired, and the crime scene investigator explained that the bullet holes in the truck could not have been caused by a single shooter if the weapons were fired simultaneously. There was no evidence presented at trial to support the claim that Petitioner acted in self-defense rather than as a principal to an intentional shooting. It was undisputed that the victim had returned to his truck and started the engine when Petitioner and Jones started shooting, with no words exchanged and without any evidence the victim waved or pointed his gun at anyone. Also, both Petitioner and Jones left the scene after the shooting. After considering all of this evidence in the light most favorable to the prosecution, the court found that any rational trier of fact could have concluded, beyond a reasonable doubt, that Petitioner was guilty of manslaughter and was not acting in self-defense. State v. Carey, 110 So.3d at 230-34.

Petitioner pursued a different sufficiency of the evidence challenge—the same one he raises here—in his post-conviction application. He argued, somewhat strangely, that the evidence proved that the shooting was not committed in sudden passion or heat of blood

because several minutes had passed between the original argument and the shooting, which he says is more than sufficient time for an average person's blood to have cooled. But he admits: "The evidence in this case proved that a homicide was committed and that it would be murder under La. R.S. 14:30.1." Tr. 815, 821-23. So Petitioner argued in his post-conviction application, and again in this court, that he was not guilty of manslaughter but was in fact guilty of second-degree murder, which carries a natural life sentence.

The state trial court denied the application but did not specifically address this claim. Tr. 886-87. The appellate court denied a writ application and acknowledged Petitioner's claim "that his conviction was contrary to the law and evidence." The court stated that, on the showing made, Petitioner failed to show that the trial court erred in denying his application. Tr. 1009. The Supreme Court of Louisiana denied a writ with a short per curiam that said the "challenge to the sufficiency of the evidence was fully litigated on direct review and therefore barred by La. C. Cr. P. Art. 930.4(A)." Tr. 1083-85. That article provides that a claim for relief that was fully litigated on appeal shall not be considered in a post-conviction application.

**C. Habeas Review**

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera

v. Collins, 113 S.Ct. 853, 861 (1993). And "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The State raises a procedural bar defense to this claim. It may have merit, but the court may decline to address whether a claim was procedurally barred when the claim fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995). This claim is plainly meritless. Petitioner concedes that the evidence supported his guilt of second-degree murder, so his argument that it does not support guilt of the lesser responsive verdict of manslaughter is inconsistent. The jury heard evidence that there was an argument of sorts, and the victim returned armed with a pistol. Petitioner and Jones responded by shooting him. The jury declined to convict Petitioner of second-degree murder but found him guilty of the lesser offense of manslaughter by concluding that he acted in sudden

passion or heat of blood, apparently provoked by the argument and the presence of the gun. There was ample evidence for the jury to make such a determination. The rejection of this claim on the merits, which was implicit in the trial court's post-conviction ruling and expressed in the appellate court's denial of a writ, is a merits decision entitled to deference under Section 2254(d). The state court decision was not detailed, but "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). There is no basis to grant habeas relief on this claim under that demanding standard.

**Ineffective Assistance of Counsel**

### A. Introduction

Petitioner argues that his attorney rendered ineffective assistance of counsel ("IAC") in several ways. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). The state court denied the Strickland claims on the merits.

### B. Habeas Burden

Petitioner's IAC claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so

a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### C. Failure to Conduct Sufficient Investigation

The firearms expert testified that several of the bullets fired at the scene were consistent with a .40 caliber Glock. He testified that a bullet jacket recovered at the scene had a different kind of rifling and was a different caliber (.38/.357), which provided evidence that there were two guns fired at the scene. Tr. 542-45.

Petitioner argues that had trial counsel, Rickey Swift, conducted a sufficient investigation, he would have discovered that this .38 caliber jacket "was from a prior shooting." He argues that this information could have been presented to the jury to show that Petitioner did not fire a weapon at the scene, and counsel could have somehow used the information to file a motion to suppress that evidence.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 104 S.Ct. at 2066. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. A petitioner cannot "simply allege but must affirmatively prove prejudice" under Strickland when complaining of counsel's failure to investigate. Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992). He must allege that an investigation is deficient and show what the investigation would have uncovered and how his defense would have benefitted from the information. Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993).

The state trial court denied this claim on the grounds that Petitioner failed to carry his burden under Strickland. The court wrote that Petitioner did not demonstrate that, but for an adequate investigation, there was a reasonable probability that the trial outcome would have been different. Tr. 886-87. The appellate court denied the claim on the showing made (Tr. 1009), and the supreme court said that Petitioner "fails to show he received ineffective assistance of counsel under the standard of Strickland." Tr. 1084.

Petitioner has offered nothing but a conclusory assertion that counsel could have somehow discovered by additional investigation that the .38 caliber jacket was from a prior shooting. He offers no particular facts to support this argument. His conclusory assertion on this issue is insufficient to demonstrate that the state court applied Strickland unreasonably when it denied this claim on the merits.

### D. Failure to Interview Witnesses

Petitioner argues that trial counsel did not interview Haston Smith, Leroy Riley, or DeMarcus Jones. He contends that Smith and Riley testified differently at co-defendant Jones' trial, and he quotes Smith as testifying that the victim started shooting after Petitioner and Jones fired at him.

Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 104 S.Ct. at 2066. The Fifth Circuit has held that failure to interview eyewitnesses constitutes deficient representation, and it has rejected an argument that vigorous cross-examination of the eyewitness at trial can cure the failure to interview the witness before trial. Anderson v. Johnson, 338 F.3d 382, 391 (5th Cir. 2003). But even if there has been defective performance, habeas relief is not warranted unless the poor performance caused prejudice—a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 104 S.Ct. at 2068; Anderson, 338 F.3d at 393.

The state courts denied this claim on the merits, as noted above. The State argues that the claim is conclusory because Petitioner provides no evidence that counsel did not interview the witnesses when he prepared for trial. And assuming that Mr. Swift did not interview the witnesses before trial, there was no prejudice. Petitioner does not identify what counsel could have discovered from interviewing them. Both Smith and Riley testified at trial and were subject to detailed cross-examination about the shooting, and Jones refused to testify. As for the asserted discrepancy between Smith's testimony at the

two trials, the State argues that the testimony of Smith and Riley was substantially the same at both trials. The appellate court's description of the evidence at Jones' trial supports this contention. State v. Jones, 128 So.3d at 594. The decision describes the testimony of Riley and Smith as it was given in this case, with the victim not drawing or firing his weapon. Even in the version offered by Petitioner, the victim was not said to shoot until after both of the accused shooters fired at him.

Given the available evidence, there is no indication that an interview of the three witnesses would provide a reasonable probability of a different verdict. Accordingly, the state courts' denial of this claim on the merits was not an objectively unreasonable application of Strickland.

### E. Failure to Subpoena Witnesses

Petitioner argues that counsel interviewed Kentrell Young and Percy Johnson, but he did not subpoena them to testify at trial. He contends that both witnesses admitted being at the scene and gave statements that Petitioner did not shoot. Petitioner also complains that counsel interviewed Omar Taylor, who would have testified that he was on the scene and that Petitioner turned and ran for cover when the first shots were fired. Petitioner also complains that counsel interviewed but did not subpoena April Morris, who would have said that she saw Petitioner run at the sound of the shots and that it was Omar Taylor who fired a weapon at the truck.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). A petitioner "must name the witness,

demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3rd 527, 538 (5th Cir. 2009). A petitioner must make a showing to the state court by affidavit or other evidence, or his claim lacks habeas merit. Cox v. Stephens, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ..."); Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect); and Evans, 285 F.3d at 377 (reversing habeas relief when no affidavits were presented from the alleged witnesses).

Petitioner did not submit an affidavit or other evidence regarding the testimony of Young, Johnson, or Morris. The state court record does contain an affidavit from Omar Taylor in which he stated that the victim "was the aggressor that day" and initiated the confrontation, but he does not say how, and he does not state that the victim waved his gun or fired it. Taylor went on to testify that he did not believe that the path by which the bullets entered the body of the victim was "congruent with the distant" to where Petitioner was standing. He therefore concluded that Petitioner did not shoot the victim, and he said he would have given his testimony had he been subpoenaed to court. He added that witness Riley had a disagreement with Petitioner about an unknown matter, and witness Hasting was close friends with the victim. Tr. 837. Taylor did not testify, as Petitioner said he would if called at trial, that Petitioner turned and ran for cover when the first shots were fired.

The state courts summarily denied this Strickland claim, as noted above. Petitioner completely fails to meet his habeas burden with respect to the three witnesses other than Taylor. As for Taylor, the state court was well justified in implicitly rejecting his affidavit as a basis for IAC relief. Taylor did not say that he witnessed the shooting and that Petitioner was not the shooter. He only gave his opinion based on how the bullets entered the victim and the distance to where Petitioner was standing, an issue for an expert witness. He suggested the other witnesses had motives to lie. He claimed that the victim was the aggressor, but he did not offer any specific facts about who did or did not do what on that day. The state court's denial of this claim was not an objectively unreasonable application of Strickland to the relevant facts.

**F. Erroneous Motion for New Trial**

Defense counsel filed a motion for new trial that mistakenly asserted in paragraph two the State had failed to prove that the defendant committed the offense of "resisting an officer by force." Tr. 266. Petitioner argues that this mistaken reference prevented the judge from entertaining the merits of the motion and determining that the verdict was contrary to law and evidence. The State points out that the motion did correctly state in paragraph one that the defendant was found guilty of manslaughter, a point that would be well-known to the trial court. There is absolutely no basis to believe that, but for this small error, there is a reasonable likelihood the judge would have granted the motion and set aside the verdict. The state court's denial of this claim was not an objectively unreasonable application of Strickland.

### G. Failure to Subject Case to Meaningful Adversarial Testing

Petitioner argues that counsel not bringing forth the witnesses discussed above amounted to a failure to subject the prosecution's case to a meaningful adversarial testing. He also complains that counsel was deficient for suggesting that Petitioner fired a weapon, although in self-defense, when Petitioner maintains that he never fired a weapon.

Ordinarily, to prevail on an IAC claim, a habeas petitioner must satisfy Strickland's two-part test of deficient performance and prejudice. There is, however, "a very limited exception" whereby prejudice is presumed in situations that are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified. Haynes v. Cain, 298 F.3d 375, 380 (5th Cir. 2002) (en banc), citing United States v. Cronic, 104 S.Ct. 2039, 2046 (1984). One of the few situations in which this exception applies is when the petitioner is represented by counsel at trial, but counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. Thomas v. Davis, 968 F.3d 352, 355 (5th Cir. 2020). Prejudice is presumed only if it is as if the defendant had no representation at all. Concessions by counsel warrant application of the rule only when they result in a complete abandonment by counsel, meaning the attorney concedes the only factual issues in dispute. Id.

Mr. Swift did not entirely fail to subject the prosecution's case to meaningful adversarial testing. He cross-examined witnesses and actively advocated on Petitioner's behalf throughout the trial. His opening statement (Tr. 296-301) was that the shooting should be viewed as a justifiable homicide, with the victim as the aggressor and Petitioner shooting only in defense of Jones. He said that the victim was "mouthing off" and saying

he has a killer, and Petitioner did not fire until shots were fired by the victim and Jones, and then in defense of his friend Jones. Swift examined witnesses to help support that defense or even suggest that Omar Taylor was the shooter. Swift argued in closing (Tr. 589-606) that Jones rather than Petitioner killed the victim and that the jury should consider a not guilty verdict. The strategy was somewhat effective because Petitioner was convicted of the lesser offense of manslaughter and avoided a natural life sentence. Petitioner has not pointed to any indications in the record where counsel made any concessions against the express wishes of Petitioner. Counsel's strategy was based on the evidence, and Petitioner does not contend that he made any objection to the strategy on the record. Petitioner has not established that attorney Swift failed to subject the prosecution's case to meaningful adversarial testing, so the state court's rejection of this claim was not an objectively unreasonable application of clearly established federal law.

### H. No Gunshot Residue Expert

The forensic pathologist testified that the victim's hands were bagged, which indicated to him that he had to complete a test packet for gunshot residue by obtaining samples from both sides of each hand. Tr. 335, 341. He explained that he does not perform the actual test for gunshot residue, but the testing looks for the presence of three substances—antimony, barium, and lead—and particular concentrations of those substances. Tr. 336. The concentration is important because the three substances are common in the environment and may be encountered by activity as innocent as digging in the ground. Id. The samples he took were submitted to the crime lab, but the lab did not perform an analysis because that is not a service it provides. Tr. 157-59.

Petitioner argues that defense counsel rendered IAC when he did not have further testing performed to see if the victim had fired a gun, which would support a claim of self-defense. There is no indication that such testing was performed, but Swift used the absence of the testing to support the claim of self-defense. He argued that the State wanted the jury to believe that the victim never fired a weapon, but the evidence showed that four of his six rounds had been fired at some time, and the lack of testing of his hands left open the potential that he fired some of those four rounds at the scene. He suggested that if the prosecution really believed that the victim had not fired his weapon, the State would have insisted on the testing. Tr. 594-95.

It might have been a reasonable strategy for Swift to attempt to obtain gunshot residue testing, but the results might have harmed rather than helped the self-defense theory. It may also have been sound strategy to avoid such testing and make use of the uncertainty to undermine the State's case. See Arvie v. Cain, 2016 WL 7315396, *11 (W.D. La. 2016) (Kay, M.J.) ("The state's decision not to test for gunpowder residue enabled defense counsel to introduce an element of reasonable doubt during closing argument, rendering the decision not to test items preserved in evidence to be sound trial strategy by the defense.").

The State submits that Jones complained in his post-conviction proceedings about the lack of testing, and the trial court ordered independent testing. The results of the 2018 test showed that each area tested contained zero particles characteristic of gunshot residue (all three elements condensed into a single particle), and only one to three particles found in each area that contained a combination of two of the three required component particles.

The report states that residue can be deposited by discharging a firearm, but also by being in proximity to the discharge of a firearm or contacting a surface with gunshot residue on it. Doc. 17, Ex. A. The pathologist testified at trial that one of the shots fired at the victim was so close that it left gunpowder tattooing on his forearm/wrist area, suggesting that the muzzle of the gun was within a few inches of the skin's surface when fired. That, as well as other potential causes, could account for the inconclusive amounts of material found on the victim's hands. The report shows that, if Swift had possessed the report before trial, it would not have significantly aided the defense or created a reasonable likelihood of a different verdict. The report would have actually undermined the defense arguments that the victim fired his weapon at the scene. Accordingly, the state courts' denial of this final claim was not an objectively unreasonable application of Strickland.

Accordingly,

It is recommended that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of January, 2021.

_____
Mark L. Hornsby
U.S. Magistrate Judge